**METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Plaintiff–Appellee,**

v.

**NORTH AMERICAN GALVANIZING & COATINGS, INCORPORATED, Defendant–Appellant.**

No. 05–3299.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 2006.

Decided Jan. 17, 2007.

Rehearing En Banc Denied
March 13, 2007.

Stephen R. Swofford, Harvey M. Sheldon (argued), Hinshaw & Culbertson, Chicago, IL, for Plaintiff–Appellee.

Lewis B. Jones (argued), King & Spalding, Atlanta, GA, for Defendant–Appellant.

Ronald M. Spritzer, Department of Justice Environment & Natural Resources Division, Washington, DC, for Amicus Curiae.

Before BAUER, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., imposes liability on certain private parties for the cleanup costs associated with a hazardous waste contamination. In turn, CERCLA Section 113(f), added by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986), allows those responsible for cleanup costs to bring actions for contribution against one another as a means of apportioning fault. Metropolitan Water Reclamation District of Chicago ("Metropolitan Water") has brought this action under both provisions, seeking to recover cleanup costs that it voluntarily incurred in remedying a parcel of property that it has leased for the past fifty years to Lake River Corporation ("Lake River"). Lake River's parent, North American Galvanizing & Coatings, Inc. ("North American"), moved to dismiss Metropolitan Water's complaint for failure to state a claim, see Fed.R.Civ.P. 12(b)(6). The district court granted the motion in part, dismissing Metropolitan Water's § 113(f) contribution claim, but allowed the § 107(a) claim to go forward. We have jurisdiction over North American's interlocutory appeal from this order, certified under 28 U.S.C. § 1292(b), and for the reasons set forth in the following opinion affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

In this appeal from the denial of a motion to dismiss, we accept as true all well-pleaded allegations in Metropolitan Water's complaint and draw all reasonable inferences in its favor. See Cler v. Illinois Educ. Ass'n, 423 F.3d 726, 729 (7th Cir. 2005). The facts of the present dispute concern a parcel of contaminated property located on South Harlem Avenue, about one quarter mile north of the Stevenson Expressway in Forest View, Illinois. Metropolitan Water owns this property, consisting of approximately fifty acres. In the late 1940s, it entered into a long-term lease with the Lake River Corporation, a wholly owned subsidiary of North American. Lake River developed the property, constructing a facility to store, mix and package industrial chemicals for its own use and for the use of its customers. Lake River's operations involved accepting, by truck, barge and rail, large amounts of chemicals that it then held in aboveground storage tanks located on the property.

These tanks, according to the complaint, were prone to leaks. Over the course of Lake River's tenancy, the tanks allegedly spilled close to 12,000 gallons of industrial chemicals into the soil and groundwater. These toxins, the complaint further alleged, were "hazardous substances," as that phrase is defined in CERCLA, see 42 U.S.C. § 9601(11), and posed an imminent danger to the environment. The complaint also stated that Metropolitan Water has "incurred substantial expenses" investigating, monitoring and remedying the contaminated portions of its property. R.9 at 6.

### B. District Court Proceedings

In February 2003, Metropolitan Water filed this action against Lake River to recoup its costs in remedying the contamination. The original complaint asserted a claim under CERCLA § 107(a), see 42 U.S.C. § 9607(a), an alternative claim for contribution under CERCLA § 113(f), see

*id.* § 9613(f), and state law claims for nuisance and breach of contract. Lake River failed to answer the complaint, resulting in a default judgment that ordered Lake River to pay approximately $1.8 million in damages to Metropolitan Water, in addition to future response costs. Metropolitan Water then amended the complaint to add Lake River's parent, North American, as a defendant; the amended complaint realleged the CERCLA counts and state law claims. North American then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

In ruling on North American's motion, the district court began by distinguishing the two CERCLA claims being asserted. The court first described § 107(a)'s liability provisions as providing an implied cause of action for cost recovery in cases "where a party is seeking direct recovery of costs incurred in cleaning up a hazardous waste site." R.23 at 3. Section 113(f) claims for contribution, by contrast, are asserted by "potentially responsible parties," or "PRPs," seeking to apportion damages among themselves. The court recognized that Metropolitan Water, because it owned the property during the period of contamination, must be considered a PRP under CERCLA's strict liability framework. Normally, the court noted, PRPs are limited to claims for contribution under § 113(f) and cannot recoup the full cost of remediation under the joint and several recovery of § 107(a). The court then observed that the Supreme Court had held recently in *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), that parties like Metropolitan Water who have commenced cleanup voluntarily, rather than being

compelled to do so by a civil suit, have no right to contribution under the plain wording of § 113(f). *See* 42 U.S.C. § 9613(f)(1) (allowing contribution only "during or following any civil action"). The district court held that, for this subset of PRPs who voluntarily undertake cleanup, an implied right to contribution under § 107(a) remains available, notwithstanding their status as strictly liable parties under the statute. A contrary outcome, the court reasoned, "would seem to lie contrary to the general purposes of CERCLA to promote prompt and proper cleanup of contaminated properties." R.23 at 7.

After hearing oral argument from the parties, we invited the Environmental Protection Agency ("EPA") to submit its views as *amicus curiae*. The EPA accepted our invitation,[1] and, with the permission of the court, Lockheed Martin Corporation also has submitted an *amicus curiae* brief. Both Metropolitan Water and North American now have filed supplemental briefs in response.

## II

## DISCUSSION

### A.

#### 1. CERCLA

In the 1970s and 80s, a number of high-profile environmental disasters, including the "Love Canal" dumping at Niagara Falls, New York, drew the public's attention to the environmental risks and health hazards posed by improper hazardous waste disposal.[2] In response to rising public concern and the view that "existing law [was] clearly inadequate to deal with

---

1. The court expresses its thanks to the EPA for its valuable assistance.

2. For details on the Love Canal site, see A. Theodore Steegmann, Jr., *History of Love Ca-*

*nal and SUNY at Buffalo's Response: History, The University Role, and Health Research,* 8 Buff Envtl. L.J 173 (2001).

this massive problem," H.R.Rep. No. 96–1016, pt. 1, at 22 (1980), *as reprinted in* 1980 U.S.C.C.A.N 6119, 6120, Congress enacted the CERCLA. The law's purpose was twofold. It was intended, for one, to "establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." H.R.Rep. No. 96–1016, at 1. Second, CERCLA was meant to shift the costs of cleanup to the parties responsible for the contamination. *See Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996).

Enforcement of CERCLA rests primarily with the EPA, and the statute gives the agency a broad range of enforcement options. To implement the statute's goals at a national level, the EPA is directed by CERCLA to formulate a National Contingency Plan outlining specific steps that parties must take in choosing a remedial action plan and in cleaning up hazardous waste. *See* 40 C.F.R. pt. 300. In addition, for specific sites that the EPA deems an imminent threat, the agency is authorized to issue an administrative compliance order or obtain a court injunction, directing any responsible party to respond to the contamination. *See* 42 U.S.C. § 9606(a). Additionally, if it chooses, the EPA may commence cleanup on its own using monies from the Hazardous Substances Superfund, *see id.* § 9604, a fund established by CERLCA and financed through a combination of appropriations, EPA fees and industry taxes. 42 U.S.C. § 9605; *United States v. Hercules, Inc.,* 247 F.3d 706, 715 (8th Cir.2001).

After Superfund money has been spent by the EPA, CERCLA allows the agency to recover its costs from the responsible parties, who are divided by CERLCA § 107(a) into the following four statutory categories:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

42 U.S.C. § 9607. For these statutorily defined parties, or PRPs, liability under § 107(a) is strict, joint and several. In other words, by invoking § 107(a), the EPA may recover its costs in full from any responsible party, regardless of that party's relative fault.[3]

## 2. SARA

In the wake of CERCLA's passage, an important question emerged: Whether a responsible party, who had been sued to commence cleanup or repay response costs, may obtain contribution from other responsible parties. As originally enacted

---

**3.** The only exception to joint liability is when the harm is divisible, but this is a rare scenario.

in 1980, CERCLA did not provide expressly for a right of contribution. *See generally Cooper Indus.*, 543 U.S. at 162, 125 S.Ct. 577. Courts filled this vacuum by recognizing an implied right of contribution for PRPs who had been sued under Section 107(a) and, because of that provision's joint-liability scheme, had been ordered to pay more than their pro rata share of the cleanup costs. *See id.* (citing cases).

In 1986, Congress amended CERCLA by way of SARA to authorize expressly a contribution action. *See* SARA, Pub.L. No. 99–499, 100 Stat. 1613. The provision allowing for contribution states in relevant part: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). In actions under this provision, the court allocates costs using equitable principles. Liability is several, as opposed to Section 107(a)'s joint and several scheme. In addition, SARA encourages parties to settle with the government by insulating any party that settles from being sued in a contribution action. *See id.* § 9613(f)(2).

SARA, in turn, produced its own set of new questions. Foremost was whether the new, codified right of contribution was now the only cause of action available to a PRP seeking to recover its cleanup costs. PRPs who had expended costs in remedying a site or settling liability understandably wished to seek joint and several cost recovery under § 107(a). Litigation en-

sued. Every circuit to decide the issue held that, after SARA, PRPs were precluded generally from seeking joint and several cost recovery under § 107(a), and that any claim seeking to shift costs from one responsible party to another must be brought as a § 113(f) claim for contribution.[4] These courts reasoned that a PRP, by definition, shares in some of the responsibility for the contamination. Therefore, any action by one PRP against another to equitably apportion liability is a "quintessential claim for contribution" and it would be unfair to allow a PRP to recover "100 percent of the response costs from others similarly situated." *Bedford Affiliates v. Sills*, 156 F.3d 416, 424 (2d Cir.1998). Moreover, these courts reasoned that permitting a PRP to elect recovery under § 107(a) would render § 113(f) meaningless, as a PRP "would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a)." *Id.* We were among the courts to adopt this reasoning and held in *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994), that a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make" sounds in contribution, and must be brought under § 113(f)(1).

### 3. The Innocent Landowner Exception

CERCLA's strict liability regime yields a great number of potentially liable individuals, in large part due to the practical reality that those truly responsible may not have the necessary money for the

---

4. *See Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1133 (10th Cir.2002); *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 191 F.3d 409, 415 (4th Cir.1999); *Bedford Affiliates v. Sills*, 156 F.3d 416, 424 (2d Cir.1998); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 351 (6th Cir.1998); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir.1997); *United Techs. Corp. v. Browning–Ferris Indus. Inc.*, 33 F.3d 96, 101 (1st Cir.1994); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1122 (3d Cir.1997).

cleanup. For example, an absentee landowner may be liable under § 107(a) for the full cost of remedying a hazardous site caused by its tenant, even if the landowner had no reason to know that hazardous waste was being stored on its land.[5] To blunt the force of a rule that limits the rights of these "innocent" parties to contribution under § 113(f), our case law has developed what is known as the "innocent landowner" exception. Under the exception, which originated in *Akzo* and was reaffirmed in *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1241 (7th Cir.1997), a joint and several cost recovery action under Section 107(a) remains available to "landowners who allege that they did not pollute the site in any way."

In *Rumpke*, the owner of a dump discovered, some six years after purchasing the site, that a "cocktail of hazardous wastes" had been deposited there regularly by a nearby recycling company. *Id.* at 1236. Recognizing that it now owned a veritable environmental disaster, the dump owner commenced voluntary cleanup and brought an action for both cost recovery under § 107(a) and for contribution under § 113(f)(1) against the company that had arranged the delivery of the toxins. Reversing an entry of summary judgment for the defendants, we decided that the dump owner, who was strictly liable but who had not actually contributed to the hazardous conditions, could maintain a direct cost

recovery claim under § 107(a). In doing so, we emphasized that the dump owner had not been the subject of either governmental or private compulsion to initiate cleanup. It undertook cleanup on its own and, maintaining that it shared no actual responsibility for the site, was not trying to divide up its own liability or apportion costs. Therefore, we held that the claim was not one for contribution that had to be brought under § 113(f); a full cost recovery action remained available to the dump owner under § 107(a).[6]

### 4. *Cooper Industries, Inc. v. Aviall Services, Inc.*

Recently, the Supreme Court had occasion to discuss the interplay between sections 107(a) and 113(f), and decided a key issue concerning the timing of a § 113(f) claim for contribution. In *Cooper Industries*, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548, an owner and one time operator of several airplane maintenance sites had sold the properties to another company in the early 1980s. After operating the sites for a number of years, the buyer, Aviall Services, discovered that both it and the seller, Cooper Industries, had contaminated the facilities with hazardous substances that had leaked into the ground from storage containers. Aviall notified Texas authorities of the contamination, who in turn directed Aviall to clean up the site. Aviall then commenced cleanup and, after it had incurred some $5 million in

---

**5.** Section 107(b) provides a limited set of affirmative defenses for parties who would otherwise be strictly liable. The defenses require showing that the damage was caused by (1) "an act of God;" (2) "an act of war;" or (3) an act of a third party who has no contractual privity to the defendant. Metropolitan Water has not pleaded any of these affirmative defenses.

**6.** We imagined in *Rumpke* that "one of two outcomes would follow from a landowner suit

under § 107(a): either the facts would establish that the landowner was truly blameless, in which case the other PRPs would be entitled to bring a suit under § 113(f) ..., or the facts would show that the landowner was also partially responsible, in which case it would not be entitled to recover under its § 107(a) theory and only the § 113(f) claim would go forward." *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1240 (7th Cir.1997).

response costs, brought an action for contribution against Cooper Industries under CERCLA § 113(f).

The Supreme Court held that § 113(f) did not authorize Aviall's suit for contribution. The Court began by noting that the cost recovery remedy of § 107(a) and the contribution remedy of § 113(f)(1) are "clearly distinct." *Id.* at 163 & n. 3, 125 S.Ct. 577. The Court then examined the text of § 113(f)(1), which provides that a claim for contribution may be brought "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). As the Court emphasized, Aviall had not been the subject of any civil enforcement action, and its claim based on Section 113(f) therefore was not "during or following any civil action." *Id.* On this basis, the Court deemed Aviall's contribution action premature.

Notably, the Court did not rule out the availability of a § 107(a) action, observing in dictum that § 113(f)(1) is not the "exclusive cause of action for contribution available to a PRP." *Cooper Indus.*, 543 U.S. at 167, 125 S.Ct. 577. The Court refused to speculate, however, on the precise nature of the alternative remedy and decided only

the question of Aviall's right to a § 113(f) cause of action.[7] The limited holding of *Cooper Industries* is that a party first must have settled its liability with a government entity or been sued, either for costs under § 107(a) or for compliance under § 106, before it may look to other responsible parties for contribution under § 113(f)(1).

**B.**

We now must decide, in the wake of *Cooper Industries,* what rights of action, if any, are available to Metropolitan Water under CERCLA. It is clear, at the very least, that Metropolitan Water cannot bring suit under § 113(f) because it has not been the subject of an action for damages or compliance under CERCLA.[8] This conclusion, as the district court held, follows from a straightforward application of *Cooper Industries.*[9]

Metropolitan Water and Lockheed urge us to hold, as the district court did, that a right of action exists under § 107(a) for private parties that, although potentially strictly liable for the costs of cleanup, have voluntary undertaken remediation and have no right to contribution under § 113(f)(1). They invite our attention first

---

7.  Justice Ginsburg in dissent, joined by Justice Stevens, argued that Aviall, despite being a PRP, retained a cause of action under § 107(a) to recover a proportionate share of its cleanup costs. In the dissent's view, the Court should have reached this issue, even though Aviall brought its action ostensibly under § 113(f). According to the dissent, Aviall's reliance on § 113(f) instead of 107(a) was simply an effort to "conform[ ] its pleading to then-governing Fifth Circuit precedent, which held that a CERCLA contribution action arises through the joint operation of § 107(a) and § 113(f)(1)." *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 173, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (Ginsburg, J., dissenting). Acknowledging these arguments, the majority nevertheless declined to address the issue because it had neither

been briefed nor addressed in the decisions below.

8.  Indeed, as far as the limited record indicates, Metropolitan Water has not come under any governmental scrutiny whatsoever.

9.  Remarkably, Metropolitan Water refuses to concede that its § 113(f) contribution claim is barred by *Cooper Industries.* We must reject this contention because the Supreme Court could not have been clearer when it said: "The issue we must decide is whether a private party who has not been sued under § 106 or § 107(a) may nevertheless obtain contribution under § 113(f)(1) from other liable parties. We hold that it may not." *Cooper Indus.,* 543 U.S. at 160–61, 125 S.Ct. 577.

to the statutory text of § 107(a), which they believe authorizes such a cause of action. The language in focus provides that four statutorily defined categories of parties "shall be liable for" the government's remedial and removal costs, *see* 42 U.S.C. § 9607(a)(4)(A), and for

> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . . .

*Id.* § 9607(a)(4)(B). Metropolitan Water maintains that, under this provision's plain wording, the only question is whether it is a "person" and whether it has incurred "necessary costs of response." *Id.* Undoubtedly, as it points out, Metropolitan Water is a "person" within the meaning of CERCLA, which defines that term, inter alia, as a "firm" or "corporation." *Id.* § 9601(21). Moreover, Metropolitan Water, as its complaint alleges, has incurred costs of response by taking "remedial action," to "prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* § 9601(24). Thus, Metropolitan Water contends, § 107(a) makes its cost recovery remedy available, in very straightforward language, to any person that has incurred necessary costs of response, including PRPs.

North American responds that § 107(a)(4)(B) does nothing more than spell out the potential liability of responsible parties and does not create an authorization to sue. Although § 107(a)(4)(B) includes liability for the response costs of "any other person," North American maintains that this language does not create a *cause of action* for "any other person," particularly for PRPs such as Metropolitan Water. The EPA agrees that Metropolitan Water has no cause of action under § 107(a), but interprets § 107(a)(4)(B) in a slightly different manner. Unlike North American, the EPA acknowledges that the subsection creates a cause of action for some private parties. The agency, however, disagrees with Metropolitan Water about who specifically is authorized to sue under the subsection. According to the EPA, the word "other" in the phrase "any other person" distinguishes those who may sue for cleanup costs from the four classes of potentially responsible parties listed earlier in subsections (1) through (4) of Section 107(a).[10] Thus, as the EPA reasons, the phrase "any other person" refers to a class of individuals who by definition are not potentially responsible for cleanup costs. For parties like Metropolitan Water who are potentially liable for cleanup costs, the EPA submits, their only cause of action lies in the contribution provisions of § 113(f), when available.

Relevant Supreme Court precedent compels us to reject, at the very least, the view taken by North American that § 107(a) does not create a cause of action at all. In *Key Tronic Corp. v. United States*, 511 U.S. 809, 818, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), the Supreme Court stated that " § 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs." In that case, Key Tronic Corporation, one of several parties responsible for contaminating a landfill, settled a lawsuit with the EPA and then brought an action against the Air Force and several other parties responsible for the contamination. Key

---

**10.** As discussed earlier, § 107(a) enumerates four classes of potentially responsible parties: (1) owners of facilities with hazardous substances; (2) former owners of facilities with hazardous substances; (3) generators of hazardous substances; and (4) transporters of hazardous substances. 42 U.S.C. § 9607(a)(1)-(4).

Tronic's complaint asserted a contribution claim under § 113(f) for recovery of part of its multi-million dollar commitment to the EPA. Additionally, Key Tronic advanced a claim under § 107(a)(4)(B) for the costs that it had incurred voluntarily before settling with the EPA.

The Supreme Court accepted certiorari only to decide whether § 107(a) authorized Key Tronic to recover its attorneys fees. Although the Court held ultimately that attorneys fees were unavailable, it also undertook a comprehensive discussion of the rights of action available under CERCLA. The Court began with the premise that " § 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs." *Id.* at 818, 114 S.Ct. 1960. According to the Court, this right of action was implied rather than express. As the Court explained, by imposing liability on responsible parties for costs "incurred by any other person," 42 U.S.C. § 9607(a)(4)(B), § 107(a) "*implies*—but does not expressly command— that [PRPs] may have a claim for contribution against those treated as joint tortfeasors." *Key Tronic Corp.*, 511 U.S. at 818 n. 11, 114 S.Ct. 1960. The Court noted additional support for this reading in the statute's multiple references to an " 'action . . . under section [9607(a)(4)(D) ].' " *Id.* at

816, 114 S.Ct. 1960 (quoting 42 U.S.C. § 9613(f)(1) and citing *id.* § 9607(a)(4)(D)). As for the interplay between sections 107(a) and 113(f), the Court observed that, after SARA, "the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." *Key Tronic Corp.*, 511 U.S. at 816, 114 S.Ct. 1960.

The Court's discussion in *Key Tronic* therefore dismisses any notion that § 107(a) does not authorize at least some parties to sue. Moreover, in *Cooper Industries*, the Court reaffirmed *Key Tronic's* recognition of a "cost recovery remedy of § 107(a)(4)(B)" that is "clearly distinct" from the contribution remedy in Section 113(f)(1). *Cooper Indus.*, 543 U.S. at 163 n. 3, 125 S.Ct. 577.

## C.

Despite recognizing an implied cause of action under § 107(a), however, these cases appear to leave open the question we now face of whether § 107(a) authorizes a cause of action by potentially liable parties in Metropolitan Water's situation.[11] This precise question has been addressed by three federal courts of appeals in the aftermath of *Cooper Industries*.[12] In *Consoli-*

---

**11.** We recognize that the plaintiff in *Key Tronic* was, just like Metropolitan Water, a potentially responsible party who brought suit under Section 107(a). However, the issue before the Court in *Key Tronic* was attorneys' fees, not the availability of a right of action under Section 107(a). We therefore cannot read *Key Tronic's* discussion as anything more than the tacit approval of a PRP's right of action in these circumstances.

**12.** Since *Cooper Industries*, a number of district courts have held that a PRP, who cannot seek recovery under section 113(f), may nonetheless bring a cause of action under section 107(a). *See Raytheon Aircraft Co. v. United States*, 435 F.Supp.2d 1136, 1145–49 (D.Kan.

2006); *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F.Supp.2d 279, 288–91 (W.D.N.Y.2006); *Sunnyside Dev. Corp., LLC v. Opsys U.S. Corp.*, 2006 WL 1128039, at \*2 (N.D.Cal. April 27, 2006); *Ferguson v. Arcata Redwood Co. LLC*, 2005 WL 1869445 at \*6 (N.D.Cal. Aug.5, 2005); *Viacom, Inc. v. United States*, 404 F.Supp.2d 3, 6–9 (D.D.C.2005); *Vine Street LLC v. Keeling*, 362 F.Supp.2d 754, 760–64 (E.D.Tex.2005). Several district courts have reached the opposite conclusion, but most did so because they found themselves bound by pre-*Cooper Industries* case law in their circuit. *See, e.g., R.E. Goodson Constr. Co. Inc. v. Int'l Paper Co.*, 2005 WL 2614927, at \*5–6, 8 (D.S.C. Oct.13, 2005); *Montville Township v. Woodmont Builders,*

*dated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir.2005), our colleagues on the Second Circuit held that parties such as Metropolitan Water may bring an action under § 107(a) for response costs incurred voluntarily. Shortly thereafter, the Court of Appeals for the Eighth Circuit adopted the reasoning set forth in *Consolidated Edison. See Atl. Research Corp. v. United States*, 459 F.3d 827 (8th Cir.2006). However, most recently, a divided panel of the Court of Appeals for the Third Circuit held that the Supreme Court's decision in Cooper Industries did not require it to revisit its prior holdings that "a PRP seeking to offset its cleanup costs must invoke contribution under § 113." *E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515, 528 (3d Cir.2006).[13] We review these decisions below.

Turning first to the decision of the Second Circuit, Consolidated Edison sought reimbursement from the operator of one of its power plants for cleanup costs that Consolidated Edison had incurred in remedying hazardous waste contamination. Consolidated Edison's complaint asserted claims under both § 107(a) and § 113(f). The court held first that a § 113(f) claim for contribution was unavailable under these circumstances because Consolidated Edison had not been sued under CERCLA or resolved CERCLA liability through settlement.

Instead, the court held, Consolidated Edison was entitled to pursue its action under § 107(a). After reviewing the statutory scheme and the effect of the Supreme

Court's decision in *Cooper Industries*, the Second Circuit concluded that sections 107(a) and 113(f) each "embod[y] a mechanism for cost recovery available to persons in different procedural circumstances." *Consol. Edison*, 423 F.3d at 99. For parties that have not been sued or made to participate in an administrative proceeding, but that "if sued, would be held liable under section 107(a)," the court held that § 107(a) authorizes a suit to recover voluntary response costs. *Id.* at 100. In this particular procedural circumstance, the court noted, a § 113(f) claim for contribution is unavailable because, as *Cooper Industries* held, that claim would not arise " 'during or following any civil action,' " *Cooper Indus.*, 543 U.S. at 160, 125 S.Ct. 577 (quoting 42 U.S.C. § 9613(f)(1)). To preclude these parties also from recovering necessary response costs under § 107(a), the Second Circuit reasoned, would discourage voluntary cleanup and thereby undermine a key feature of CERLCA.

Like the Second Circuit, the Eighth Circuit in *Atlantic Research* was faced with the following question: "Can one liable party recover costs advanced, beyond its equitable share, from another liable party in direct recovery, or by § 107 contribution, or as a matter of federal common law?" 459 F.3d at 834. The court answered in the affirmative and, following the Second Circuit, held "that it no longer makes sense to view § 113 as a liable party's exclusive remedy." *Id.* The Eighth Circuit further explained that "[t]he Supreme Court [had] emphasized that §§ 107

*LLC*, 2005 WL 2000204, at *3 (D.N.J. Aug.17, 2005); *Boarhead Farm Agreement Group v. Advanced Envtl. Tech. Corp.*, 381 F.Supp.2d 427, 435 (E.D.Pa.2005); *City of Waukesha v. Viacom Int'l, Inc.*, 362 F.Supp.2d 1025 (E.D.Wis.2005); *Mercury Mall Assocs., Inc., v. Nick's Mkt., Inc.*, 368 F.Supp.2d 513, 519–20 (E.D.Va.2005) (following 1998 Fourth Circuit

precedent but characterizing the result as "quixotic"). It is unclear what result these district courts would have reached had they been unconstrained by older circuit precedents.

**13.** Judge Sloviter filed a dissenting opinion.

and 113 are 'distinct.'" *Id.* at 835. "Accordingly," the court continued, "it [wa]s no longer appropriate to view § 107's remedies exclusively through a § 113 prism," and it "reject[ed] an approach which categorically deprive[d] a liable party of a § 107 remedy." *Id.* Like the Second Circuit, it found "no such limitation in Congress's words." *Id.*[14]

The Court of Appeals for the Third Circuit, however, reached a conclusion different from that of the Second and Eighth Circuits. In *E.I. DuPont,* the company-plaintiff owned property which "was owned or operated by the United States at various times during World War I, World War II, and/or the Korean War, during which time the United States was responsible for some contamination." *E.I DuPont De Nemours,* 460 F.3d at 525. The company had undertaken a voluntary cleanup of one of the sites, in the absence of a preexisting § 106 or § 107 action, and also in the absence of a § 113(f)(3) settlement, and later instituted a contribution action against the United States. The district court rejected the company's claim, and the judgment was affirmed by the Third Circuit. In doing so, the Third Circuit believed that it was bound by its precedent, which held that "a PRP seeking to offset its cleanup costs must invoke contribution under § 113." *Id.* at 528. It declined to follow the lead of the Second Circuit and limit its prior case law "factually to those circumstances where a PRP has already satisfied the prerequisites for § 113 contribution set forth in

*Cooper Industries." Id.* at 530. The Third Circuit also determined that nothing in *Cooper Industries* required it to reevaluate that precedent: *"Cooper Industries* did not explicitly or implicitly overrule our precedents; indeed, the Supreme Court expressly declined to consider the very questions at issue here." *Id.* at 532. Finally, the court rejected DuPont's argument that "in the wake of *Cooper Industries,* our [prior] decisions . . . are in direct opposition to CERCLA's broad remedial purpose as expressed in its legislative history." *Id.* at 533. The court held that "a thorough review of CERCLA, as amended by SARA, does not support the conclusion" that, "because CERCLA's general goal was to assure prompt and effective cleanups, and *sua sponte* cleanups by PRPs may be prompt and effective, those PRPs must be able to seek contribution." *Id.* at 541. Instead, "Congress intended to allow contribution for settling or sued PRPs as a way to encourage them to admit their liability, settle with the Government, and begin expeditious cleanup operations pursuant to a consent decree or other agreement." *Id.*[15]

After reviewing the rationales of our sister circuits, we find ourselves in agreement with the conclusion reached by the Second and Eighth Circuits, and by Judge Sloviter in her dissenting opinion in *E.I. DuPont.* The Supreme Court's continued recognition of an implied cause of action in § 107(a), coupled with that subsection's plain language, convince us that Metropoli-

---

14. The Eighth Circuit went on to conclude that "the broad language of § 107 supports not only a right of cost recovery but also an implied right to contribution." *Atl. Research Corp. v. United States,* 459 F.3d 827, 836 (8th Cir.2006).

15. In her dissenting opinion, Judge Sloviter disagreed with the majority's conclusion that *Cooper Industries* did not "weaken[ ] the con-

ceptual underpinnings" of the court's prior case law. *E.I. DuPont De Nemours & Co. v. United States,* 460 F.3d 515, 545 (3d Cir. 2006). She also believed that, in light of *Cooper Industries,* the court's precedent could no longer "be reconciled with the policies Congress sought to encourage when it enacted CERCLA." *Id.*

tan Water may sue under § 107(a) to recover necessary response costs.

Section 107(a) states in relevant part that a responsible party

(4) ... shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . . .

42 U.S.C. § 9607(a)(4). Nothing in subsection (B) indicates that a potentially liable party, such as Metropolitan Water, should not be considered "any other person" for purposes of a right of action.

Certainly, as the EPA points out, the word "other" in that phrase should be given meaning as a distinguishing term. Yet, we disagree that the word "other" distinguishes "any other person" from the four categories of potentially responsible parties listed earlier in subsections (1) through (4) of § 107(a). Rather, we read "other" as distinguishing "any other person" from the "United States Government," a "State" or an "Indian tribe," the parties listed in the immediately preceding subsection. *Id.* These parties, as subsection (A) states, may recover costs *"not inconsistent* with the national contingency plan." *Id.* § 9607(a)(4)(A) (emphasis added). By contrast, "any other person" is limited to recovery of those costs *"consistent* with the national contingency plan."

*Id.* § 9607(a)(4)(B) (emphasis added). Thus, we read the two subsections, and the reference to "any other person," simply as the statute's way of relaxing the burden of proof for governmental entities as opposed to private parties.[16]

The only remaining questions, then, under § 107(a) are whether Metropolitan Water is a "person" and whether it has incurred "necessary costs of response." *Id.* § 9607(a)(4)(B). Without question, Metropolitan is a "person" under CERCLA because it is a "firm" or a "corporation" within the meaning of the act. *Id.* § 9601(21). Moreover, the complaint in the present case alleges that Metropolitan Water incurred " 'response' costs within the meaning of § 101(25) of CERCLA (42 U.S.C. § 9601(25)) including investigation, monitoring and clean-up costs." R.17 at 14. Finally, the allegations in the complaint make clear that Metropolitan Water neither has settled any liability with a government entity nor has been the subject of a CERCLA suit for damages. These allegations adequately plead a cause of action under § 107(a).

Recognizing in § 107(a) a right of action for Metropolitan Water also appears in line with the explicit savings clause found in § 113(f)(1). The last sentence of § 113(f)(1) provides: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] of this title or [§ 107] of this title." 42 U.S.C. § 9613(f)(1). As the Supreme Court stated in *Cooper Industries,* "the

16. Indeed, other circuits have understood this portion of the statute as distinguishing between the Government's burden of proof and that of private citizens. In *United States v. E.I. DuPont De Nemours & Co.,* 432 F.3d 161, 178 (3d Cir.2005) (en banc), the Third Circuit held that, in a suit by a governmental entity under § 107(a)(4)(A), cleanup costs are presumed consistent with the national contin-gency plan, and the burden rests on the defendant to prove that they are inconsistent. Correspondingly, in a suit by "any other person" under § 107(a)(4)(B), the burden rests on the plaintiff to establish that its response costs are consistent with the national contingency plan. *See Carson Harbor Vill., Ltd. v. County of Los Angeles,* 433 F.3d 1260, 1265 (9th Cir.2006).

sentence rebuts any presumption that the express right of contribution provided by the enabling clause [of § 113(f) ] is the exclusive cause of action for contribution available to a PRP." *Cooper Indus.*, 543 U.S. at 166–67, 125 S.Ct. 577.

Our holding today does not require us to revisit our pre-*Cooper Industries* decision in *Akzo Coatings*, in which we held that a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make" must be brought under § 113(f)(1). *Akzo Coatings*, 30 F.3d at 764. In *Akzo*, the plaintiff, before bringing suit against another PRP, had been the subject of an EPA administrative order under § 106 requiring Akzo Coatings and several other "liable persons" to conduct certain emergency removal activities. *Id.* at 762. Here, by contrast, there has been no EPA order and no proceeding apportioning necessary costs of response to Metropolitan Water. Thus, unlike in *Akzo*, Metropolitan Water has not been compelled to initiate cleanup or repay the EPA, and Metropolitan Water's action against North American is not an action "for an appropriate division of the payment one of them has been compelled to make." *Id.* at 764.[17]

In addition, we are concerned that prohibiting suit by a voluntary plaintiff like Metropolitan Water may undermine CERCLA's twin aims of encouraging expeditious, voluntary environmental cleanups while holding responsible parties accounta-

ble for the response costs that their past activities induced. As *Consolidated Edison, Atlantic Research* and several post-*Cooper Industries* district court decisions have recognized, in order to further CERCLA's policies, potentially responsible parties must be allowed to recover response costs even before they have been sued themselves under CERCLA or have settled their CERCLA liability with a government entity. Were a cost recovery action unavailable in these circumstances, the Second Circuit reasoned, "such parties would likely wait until they are sued to commence cleaning up any site for which they are not exclusively responsible because of their inability to be reimbursed for cleanup expenditures in the absence of a suit." *Consol. Edison*, 423 F.3d at 100. As the court concluded, this result "would undercut one of CERCLA's main goals, 'encourag[ing] private parties to assume the financial responsibility of cleanup costs by allowing them to seek recovery from others.' " *Id.* (quoting *Key Tronic*, 511 U.S. at 819 n. 13, 114 S.Ct. 1960 (internal quotation marks omitted)).

North American and the EPA respond to this policy argument with one of their own. They contend that the United States may lose valuable settlement leverage if parties such as Metropolitan Water are allowed to bring an action under § 107(a) in these circumstances. They point out that PRPs who choose to settle with the United States enjoy protection from contribution suits by other parties and retain the ability to seek contribution themselves. *See* 42

---

17. For this reason, we hesitate to label Metropolitan Water's right of action under § 107 an "implied right to contribution," as the district court did. Under the technical definition of contribution at common law, a volunteer who is not itself liable may not pursue contribution. *See* 18 Am.Jur.2d Contribution § 15; Restatement (Second) of Torts § 886A(1) & cmts. b & e. Section 107(a) only imposes liability on private parties to the extent there have been "necessary costs of response" al-

ready incurred. 42 U.S.C. § 9607(a)(4). If no costs qualifying under this language have been incurred or awarded against the volunteer, then that party has no right to contribution. When Metropolitan Water commenced cleanup, no other party had taken remedial action and there was no common liability. Therefore, Metropolitan Water's action under § 107 is characterized more appropriately as a cost-recovery action than as a claim for contribution.

U.S.C. § 9613(f)(2). By contrast, PRPs who choose not to settle are barred from seeking contribution under § 113(f) from the settling parties and thus face potentially disproportionate liability. If the statute were to allow non-settling parties to sue under § 107(a), even when unable to do so under § 113(f), North American and the EPA contend that PRPs would be discouraged from settling with the United States.

We are sensitive to the EPA's concerns regarding diminished settlement leverage. Certainly, the contribution protection provision in § 113(f)(2) appears to reflect a congressional desire that PRPs ought to be encouraged to settle their liability with the United States. However, these concerns simply do not exist in the circumstances presented here. In this case, the allegations of the complaint make clear that neither the EPA nor any other government entity has involved itself in the cleanup undertaken by Metropolitan Water. As far as the complaint indicates, Metropolitan Water's undertaking was completely voluntary and financed by Metropolitan Water alone. In the present case, the EPA simply is not in the picture and has no reason to purse a settlement.

We hold that Metropolitan Water has a right of action under CERCLA § 107(a).[18]

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

18. In reaching this holding, we find it unnecessary to decide whether Metropolitan Water falls within the "innocent landowner" exception recognized by some of our pre-*Cooper Industries* decisions. *See, e.g., Rumpke,* 107 F.3d at 1240. *Rumpke* was decided in a statutory regime in which landowners who undertook voluntary cleanup efforts had the option of recovering costs via an action for contribution under § 113(f). Given that *Cooper Industries* has foreclosed that option, we find the "innocent landowner" exception of little value in deciding the present dispute.